## FRANK J. CASHIN *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Plymouth.   January 29, 1904. — May 18, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Evidence*, Of verbal act showing mental condition; Of exclamations showing pain, Records. *Practice, Civil*, Exceptions.

In an action for injuries caused by a railroad collision, from which the plaintiff was alleged to have suffered mental injury resulting in melancholia, the plaintiff's wife, called as a witness in his behalf, can testify that she heard the plaintiff say that "if he didn't have children he would commit suicide," as a verbal act tending to show the plaintiff's mental condition, there being nothing to show that this was part of a private conversation.

On the question of the plaintiff's condition alleged to have been caused by a railroad collision, a witness may be asked " What have you observed, if anything, about his suffering from headaches when you have been there ? " and can answer that he has seen the plaintiff come out of his room with his hands on his head saying " Oh, Joe, God Almighty, if I could only get rid of these headaches," and the exclamation showing present pain is none the less admissible as such if it also carries an idea of similar past pain, in regard to which it would not be admissible.

Where a question to a witness is excepted to, and the question is allowed and answered, and the excepting party does not further except to the answer or ask the judge to strike out any part of it as non-responsive, he cannot afterwards contend in this court that a non-responsive portion of the answer is inadmissible, if the question itself and the responsive portion of the answer are admissible.

Books kept in a hospital containing entries made in regard to the cases treated there are not public records, not being kept under any requirement of law, and where it is not shown that the person who made the entries is dead or cannot be produced such books are not admissible in evidence, especially if it does not appear that they are complete and perfect records.

TORT, against a railroad company, for personal injuries caused by a collision of trains of the defendant.   Writ dated September 20, 1902.

At the trial in the Superior Court before *Harris*, J., the liability of the defendant was admitted, and the case was tried for the assessment of damages.

The plaintiff's wife, called as a witness in his behalf, was asked the question: " Will you state any things of speech which you have heard bearing upon the question of his melancholy disposition ? "   The defendant objected, and the judge al-

lowed the question. The witness answered "I have heard him say if he didn't have children he would commit suicide." — *Q.* "More than once have you heard him say it?" *A.* "Several times."—*Q.* "When have you noted chiefly expressions of that sort?" *A.* "Particularly after he has a severe headache."

The question put to the witness Barnes, referred to in the opinion, was as follows: "What have you observed, if anything, about his suffering from headaches when you have been there?" The witness began his answer as follows: "Why, when I have gone to the house and he has been in the bedroom, that is, lying down, his wife has called him and told him that Joe was here and wanted to see him; he had come out of the room with his hands to his head, 'Oh, God Almighty, Joe, —'"

The defendant's counsel objected to the witness testifying to statements made to him by the plaintiff, and a colloquy, mentioned in the opinion, ensued between the judge and the counsel on both sides. The judge allowed the question, subject to the defendant's exception. The witness then answered: "He has come out the room, when I have met him at the door with his hands on his head, and he says: 'Oh, Joe, God Almighty, if I could only get rid of these headaches; if they would only put me back where I was before, I wouldn't give a damn.'" No motion was made to strike out any portion of this answer.

The books offered by the defendant as records of hospitals, which are mentioned in the opinion, were books kept in the Mercy Hospital of Springfield and the Springfield Hospital, at both of which the plaintiff was a patient after his injuries, showing the entries made in regard to the cases treated there including a statement of the diagnosis. The books were excluded, subject to the defendant's exception.

The jury returned a verdict for the plaintiff in the sum of $39,045; and the defendant alleged exceptions.

*F. S. Hall*, for the defendant.

*S. L. Whipple*, for the plaintiff.

HAMMOND, J.    One of the claims made in behalf of the plaintiff was that the accident had caused serious mental injury, resulting among other things in melancholia. As bearing upon his mental condition in that respect, the testimony of the wife that she had heard him say "if he didn't have children he would

commit suicide," was plainly admissible. It was a verbal act which tended to show the mental condition. *Lane* v. *Moore,* 151 Mass. 87. *Hayes* v. *Pitts-Kimball Co.* 183 Mass. 262, 263, and cases cited. It is suggested in the defendant's brief that this was a private statement by a husband to his wife, but no such suggestion was made at the trial and there is nothing in the record to show that the statement was part of a private conversation.

The question put to the witness Barnes so far as it sought to show exclamations of present pain was admissible. After a colloquy between counsel on each side and the judge, in which counsel for the plaintiff expressly disclaimed any purpose except to show expressions or ejaculations of present pain and expressly told the witness that if the plaintiff said " he was sorry his head did ache, or that he wished he could be back where he was before," the witness " need not put that in," the judge said in substance that the witness might answer the question so far as it called for any statement as to a then alleged existing pain and condition. The whole colloquy shows that the question called only for ejaculations of pain, and that the judge admitted it solely for that purpose. The witness, however, with a perversity which it may be argued was not due to ignorance on his part as to the proper scope of the question, — a kind of perversity quite common where a witness whose sympathies are enlisted has something which he is anxious to say, — answered the question in a very objectionable manner, and in direct opposition to the instructions given him by the counsel who called him. That part of the answer which ends with the word " headaches," when taken in connection with the statement that at the time of the exclamation the plaintiff had his hands upon his head, may be regarded as an exclamation and ejaculation of present pain. And it is none the less so even if it also carries an idea of similar past pain. So far as it was an ejaculation of present pain it was admissible and was therefore rightly admitted, but it was not to be considered as any evidence whatever of similar prior pain. The rest of the answer was inadmissible. Since the question and a part of the answer were admissible, it was the duty of the counsel for the defendant, if he desired to object to any part of the answer as going beyond the proper scope of the

question, to call the attention of the judge to that fact by moving to strike out the part of the answer which was not responsive. Inasmuch as he did not take that course, the judge and opposing counsel were warranted in assuming that he relied upon his general objection to the question and not upon any specific objection to the answer, and that he regarded the whole answer as responsive and within the proper scope of the question. Under these circumstances, he must stand upon the general objection to the question, and upon that matter the fact that some portion of the answer not responsive to the question was admitted, is not material. It is to be assumed that in the instructions to the jury the proper bearing and scope of the answer was stated to the jury.

In the case of the books which were offered as records of the respective hospitals, it was not contended that as to either institution the records were kept under any requirement of law. They were therefore not public records, and were not admissible, unless supported by the testimony of the one who made them, if that person were still alive and capable of being produced to testify. *Kennedy* v. *Doyle,* 10 Allen, 161, 165. See also *Townsend* v. *Pepperell,* 99 Mass. 40, where the record was admitted evidently upon the doctrine that, it being more than thirty years old, there was no need to show the death of the person who made it. In the present case the judge may well have found upon the evidence as to each hospital, both that the records were imperfect and that there was no reason to suppose that the writers could not be produced. The records upon such a finding were properly excluded.

*Exceptions overruled.*