### Arch Fults v. The State.

No. 4852. Decided May 15, 1918.

Rehearing denied June 19, 1918.

**1.—Murder—Evidence—Opinion of Witness—Dying Declarations—Res Gestae.**

Upon trial of murder there was no error in admitting testimony of the declarations of deceased shortly after taking the alleged poison that he would die, etc., unless relief was given him at once, etc., and that defendant administered the poison, shortly after which he died, this was res gestae as well as his dying declaration. Following Rice v. State, 49 Texas Crim. Rep., 569, and other cases.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder by poisoning, the evidence was sufficient to sustain the conviction, there was no reversible error.

**3.—Same—Bills of Exception—Rule Stated—Acts of Defendant.**

The rule is where a bill of exceptions is qualified the qualification controls the bill of exceptions, and the two together control and are superior to the statement of facts, where there is a conflict between the bill of exceptions and the evidence; and where the qualification of the bill showed that the statement of deceased that the defendant had given him a drink with poison in it was made in the presence of the defendant, who did not reply thereto, there was no reversible error.

**4.—Same—Facts Stated in Opinion—Rehearing.**

Where appellant in his motion for rehearing contended that the matters were stated too strongly against defendant in the original opinion, but the records showed that the difference, if any, was immaterial, there was no reversible error.

Appeal from the District Court of Shelby. Tried below before the Hon. Daniel Walker.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*D. M. Short & Sons,* for appellant.—Cited cases in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at twenty years confinement in the penitentiary.

The State's case is to the effect that appellant killed deceased by administering poison through a drink of whisky. Ill-will and motive were shown growing out of a detail of facts we deem unnecessary to mention. There was a controversy about this in the testimony. Deceased died from the effects of strychnine poison.

The bills of exception sufficiently state the case relied upon by the State. There are seven bills reserved; six of these refer to the testimony of the particularly named witnesses, and the seventh is rather a general summary of the testimony shown by previous bills of exception. These bills show, in substance, that Mrs. Myrtie Fults testified that deceased came to where she and others were cleaning a pig and leaned over the fence, quite sick and suffering, and stated defendant had poisoned him; that appellant gave him one drink. Attempting to take another drink it was so bitter he spit it out, and told defendant that he had poisoned him; that defendant wanted him to drink more, but he declined. This witness also stated deceased offered to give a deed to his entire place to her or anyone else to prosecute defendant because he had poisoned him.

Parrish, the father of Mrs. Fults, testified that deceased came to his house that night and died, and made the statement that he was a dead man if there was not some relief given him; that if the doctor could not do something for him he was a dead man; that he wanted his wife to come and see how he had to die and suffer; that he wanted to talk to his children; that he had enough poison to kill ten men; that deceased knew all the parties at his house that night and called them by name; that Dr. Williams, John Hopkins, witness' wife, Bud Wilkerson and himself were present when deceased died.

The State's witness Hopkins testified that deceased made a statement in the presence of witness and Dr. Williams that he was poisoned; that deceased had several convulsions before he died; that these convulsions would cause him to draw his arms and lower limbs back and cause him to draw all over and to jerk, and when he had a convulsion he would ask those about him to hold him, and said he was going to die if there was not something done for him; that he wanted them to send for his wife and children.

Dr. Williams testified that deceased made the statement at the residence of J. F. Parrish, on the occasion of the witness having been called there to attend deceased, that deceased had told defendant after he had swallowed the whisky, and after he had taken two swallows and had spit out part of the last swallow, that he, defendant, had poisoned him with strychnine, and had insisted on deceased taking more of the whisky, and the defendant said it was not strychnine, but appellant refused to drink more of the whisky himself, and that defendant followed deceased

some distance trying to induce him to drink more of the whisky, which he declined.

Mrs. Sara L. Parrish testified that the deceased, Wilkerson, on the night of his death at her house made the statement that he was poisoned; that defendant gave him two drinks of whisky; that he drank two drinks with defendant; that he spit out one and said to defendant, "You have poisoned me." That defendant followed him down the road a piece; that the whisky tasted bitter, "and he asked us to give him grease, and if we knew any other remedy to give it to him; that he knew that it was strychnine because it was so bitter; that he wanted water but he wouldn't drink as he knew it was against strychnine."

Bud Wilkerson testified that deceased a few minutes before he died, while lying on the bed at the residence of J. F. Parrish talking to witness, said: "I am gone, Bud; there ain't no chance for me"; that defendant had given him whisky after he had turned off the road some 300 yards from Mr. Parrish's home; that defendant did not drink with him and nobody else did; that as soon as he had taken the whisky inside he knew something was wrong, and he further said: "You can't do me any good on earth; I am gone; he has killed me; but I want you to push it in law. You can never do me any more good on earth."

There are other statements in preceding bills of exception which show some of these accusations of having been poisoned by defendant were made in defendant's presence and hearing. Objection urged to this testimony is that it was but the opinion of the deceased that it was poison the defendant gave him. The central point of objection was that this was but an opinion.

Appellant's counsel filed a very strong and ably written brief presenting that view of the case, citing quite a number of well considered opinions of courts of the different States. Some of these cases support his contention. There are many cases collated in 21 L. R. A. (N. S.), 840, in the editor's note under House v. State. The trend of the weight of the authorities seems to support the Rice case in 49 Texas Crim. Rep., 569, and the same case in 54 Texas Crim. Rep., 149. The writer did not agree with the majority opinion in the two Rice cases, above cited, but those opinions follow that line of cases which are adverse to the contention of appellant. The majority of this court think the opinions in the Rice cases, supra, are correct and should be followed. In view of this fact we hold that the court was not in error in following the ruling in those cases in the admission of this testimony.

The remaining question urged for reversal is the insufficiency of the testimony. In addition to what has been stated, the witness Emerson testified to threats by appellant against the deceased, and especially by the qualification of the judge to these bills of exception. The qualifications are pretty full. Emerson testified "that if the deceased said that he, the defendant, had poisoned the trees, that he, the defendant, would poison Monroe Wilkerson (deceased)." He further testified that defendant told him, Emerson, after the deceased was dead, that he, the

defendant, had killed one of the sons-of-bitches, and if he got out of it he was going to kill the others, meaning the deceased's brothers. It seems that trees had been poisoned and appellant and one or more of his brothers had been accused of that act. There is some controversy as to whether appellant admitted the poisoning or was connected with it. We are of opinion that in view of the acts, facts and circumstances attending the poisoning, and the incidents with reference to what occurred, and the statements of the deceased, some of which were in the presence of the defendant, that this confession and other incidents of the case would justify the jury in their verdict.

Finding no reversible error in the judgment as the record is presented it will be affirmed.

*Affirmed.*

ON REHEARING.

June 19, 1918.

DAVIDSON, PRESIDING JUDGE.—Appellant, in his motion for rehearing, contends the court erred in holding the evidence sufficient to justify the verdict, and briefly takes issue with the court in some of the statements of the opinion. The writer does not think the case has been strongly made out, but in a review of the case by the court the conclusion is reached that the evidence was sufficient to justify the verdict.

In the qualification of one of the bills of exception by the trial judge he calls attention "to the statement made by the deceased, that the defendant had given him a drink at the forks of the road; that he (deceased) took one drink, swallowed it; that he took another, but spit it out because it was so bitter; that he (deceased) told Arch Fults that he had poisoned him with strychnine, and that he refused to drink any more of it; but that defendant followed him down the road and insisted that he take another drink; that the deceased tried to get him (defendant) to drink some of it, but the defendant refused. Also that the deceased knew that it was strychnine because it was bitter, and when he would have a convulsion, during the time he was making the statement complained of in the bill of exceptions, he would ask different ones sitting by to stick their lips to his and see how bitter it was. Also that when the defendant first came up, at Mrs. Parrish's house, the deceased told the persons there that he was going to have convulsions; that he knew that it was strychnine because it was so bitter. Also that at one time when he was making this statement Mrs. Myrtle Fults was standing by the defendant when the deceased made this statement to the father of Mrs. Myrtle Fults, in the presence and hearing of the defendant, and all of which Mrs. Myrtle Fults says she heard: 'Jim, what will become of a man that will do one this way?' And that the defendant made no reply to this." This justifies the statement in the opinion that some of the accusations were made in the presence of the defendant. Appellant contends in his motion that these matters were denied by

appellant. There is evidence to the effect that appellant denied poisoning the deceased. The bill of exceptions as qualified was accepted by the defendant without contest. The rule is, where a bill of exceptions is qualified the qualification controls the bill of exceptions, and the two together control and are superior and control the statement of facts where there is a conflict between the bill of exceptions and the evidence. Whether he denied it or not, the statements were made in his presence and hearing, and the statement by the court in his qualification to the bill is to the effect that defendant made no reply to such statement. We think, therefore, that the statement in the opinion was borne out by this quotation from the record as found in the bill of exceptions.

The opinion also recites, in a general way: "It seems that trees had been poisoned and appellant and one or more of his brothers had been accused of that act." This statement may be perhaps a little strong. The record shows in this connection that there was considerable talk in the community with reference to poisoning trees. Appellant and his brother testified to the effect that appellant's brother had been accused of poisoning the trees, but that they had not heard that appellant had been so accused. There seems to have been some talk in the neighborhood with reference to poisoning of the trees. Appellant and his brother, it is also shown, had a contract or were engaged in getting out timber, and these poisoned or alleged poisoned trees were supposed to be some of the timber on the land on which they were cutting trees. However, the bill of exceptions as qualified by the judge makes this statement in that connection: "The State showed by the witness Rube Emerson that if the deceased said that he, the defendant, had poisoned the trees, that he, the defendant, would poison Monroe Wilkerson. And also that the defendant told him, Rube Emerson, after the deceased was dead, that he, the defendant, had killed one of the sons-of-bitches, and if he got out of it, he was going to kill the others (meaning the deceased's brothers)." The deceased was Monroe Wilkerson. These matters are mentioned in deference to the motion for rehearing in which it is contended the matters were stated too strongly against the defendant in regard to these issues. We are of opinion that there is not sufficient merit in these contentions to change the conclusion that the jury was justified under the facts in reaching their verdict. We are also of opinion that the difference between the opinion and the statement of facts as contended by appellant, conceding that appellant is correct as to the matter of poisoning the trees, is not of sufficient moment to change any material conclusion reached.

The motion for rehearing will, therefore, be overruled.

*Overruled.*