## CHRISTINE E. LARRABEE'S CASE.

### Washington.   Opinion April 19, 1921.

*Findings of fact by the Industrial Accident Commission from circumstantial evidence alone are not unwarranted as a matter of law if they are supported by rational or natural inferences from facts proved or admitted, provided the inferences upon which the findings are based are more consistent with the proven or admitted facts than any other inferences which may be rationally drawn therefrom.   Hearsay or incompetent evidence alone not sufficient for reversal of findings, if such findings are based upon sufficient competent evidence.*

In determining whether injuries resulting in death arose out of and in the course of the employment, statements, not of deceased's mental or physical condition, but of what occurred from which his physical condition resulted are inadmissable, unless occurring at the time of the injury.

The mere receipt of hearsay or inadmissible evidence by the Industrial Accident Commissioner, however, is not alone sufficient to require a reversal of his findings, if there is sufficient competent evidence in the case upon which his findings may rest, unless it appears that his findings were in some part at least, based on such incompetent testimony.

Findings of fact by the commissioner from circumstantial evidence alone are not unwarranted as a matter of law if they are supported by rational or natural inferences from facts proved or admitted even though not only possible or even reasonable inference to be drawn therefrom; provided the inferences upon which the commissioner's findings are based are more consistent with the proven or admitted facts than any other inferences which may be rationally drawn therefrom.

There was sufficient competent testimony presented before the commissioner in this case upon which his findings may rest, and it does not appear that his findings were in any part based on the inadmissible testimony.

On appeal by defendant.   This case was taken to the Law Court on an appeal by defendant from a decree of the Industrial Accident Commission granting compensation to claimant under the Workmen's Compensation Act.   The claimant is the widow of Herbert Larrabee, who, on March 12, 1920, while in the employment of the St. Croix Paper Company at Woodland, Maine, in removing ashes from under

the boilers in defendant's mill, breathed gas fumes from the ashes, which it was alleged caused his death which followed on March 21, 1920. The question involved was as to whether the evidence in the case warranted the findings of the commission. Appeal dismissed. Decree of sitting Justice affirmed.

Case stated in the opinion.

*Reed V. Jewett*, for plaintiff.

*Curran & Curran*, for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, WILSON, DEASY, JJ.

WILSON, J. The deceased was employed by the St. Croix Paper Company to clean ashes from pits where they were dumped from the boilers. Ashes in large quantities were dumped every two or four hours, depending on the kind of coal used. When Minto coal was being used the ashes had to be dumped four times a "shift" or every two hours. The ashes were dumped into a concrete pit about three feet high and twelve feet square and when first dumped were very hot and gave off more or less gas, especially the Minto coal which contains considerable sulphur.

The duties of the deceased required him to put water on the ashes, and when cool enough, to remove them from the pits. If the heat when first dumped was too severe or the gas too strong, the workmen were supposed to go out and let them cool off and the gas escape, until they could go back to work.

In one of the boilers on the day the illness or injury of the deceased occurred, Minto coal was being used. At the close of his "shift" the deceased came out and said to a fellow-employee who was just going on: "Got too much gas." To another who inquired how he felt he said: "Never mind, the gas almost kill me." When he reached home that night his wife asked him what the trouble was and, as she stated: "He said he got gassed." To the doctor who was called the next day he said: "Doctor, I have been working in the boiler room and got poisoned with gas," and perhaps at another time: "I got gassed in the mill."

The following day owing to his serious condition he was removed to a hospital where he died about a week later. No evidence was offered of his condition while in the hospital or the immediate cause of his death, except it appears to have been assumed at the hearing

that the death certificate gave, as the cause of his death, bronchial pneumonia. The attending physician prior to his entering the hospital testified that death from bronchial pneumonia might have resulted from the conditions which he found existing at the time of his first call.

The Industrial Accident Commissioner found that "the claimant received a personal injury by accident arising out of and in the course of his employment, to wit, an overdose of gas from the ashes dumped into the ash pit under boiler No. 10 from the direct results of which he died."

The matter comes before this court in the usual course, and the only question is whether there was sufficient competent evidence introduced before the commissioner to warrant his findings as a matter of law. If so, his findings must stand, even though inadmissible testimony was received, unless it appears that his findings were in any part based on such incompetent testimony. We think there was sufficient competent evidence on which his findings may rest.

The appellant contends that evidence is entirely lacking upon which to base the commissioner's findings, unless certain hearsay evidence was considered, and it not appearing it was not considered, the appeal should be sustained.

If such were the rule, the appeal should be sustained. Evidence clearly hearsay in its nature was received, bearing directly upon the manner in which the injury occurred. It should not have been received, but the receipt of it alone is not sufficient to require a reversal of the findings, if there is otherwise a legal basis for the conclusions of the commissioner. *Kinney* v. *Cadillac Motor Car Co.*, 199 Mich., 435; *Reck* v. *Whittlesberger*, 181 Mich., 463; *Mailman's Case*, 118 Maine, 172. In the last case, the commissioner expressly stated, he did not base his findings in any part on the incompetent testimony; but if no such statement is made in the findings of the commissioner, we do not think in this class of cases it is to be presumed that prejudice resulted from the receipt of inadmissible testimony, if there is sufficient competent evidence in the case on which his findings may rest. *Reck* v. *Whittlesberger*, supra; *Kinney* v. *Cadillac Motor Car Co.*, supra.

The statements of the deceased as to the cause of his illness are not statements as to his mental or physical condition at the time, but statements as to what occurred from which his physical conditions

had resulted and all come within the rule of hearsay evidence. While statements of pain, suffering, symptoms and even a statement that deceased "got hurt, and then or afterwards indicating the place of injury," where the question was whether his death was the result of traumatic pneumonia or of a weakened physical condition due to natural causes, have been held to be properly received, Greenleaf Ev., Vol. 1, Sec. 1626, 16 Ed.; *Heald* v. *Thing*, 45 Maine, 392, 394; *Mailman's Case*, supra; we find no case where a statement of the cause of the physical injury or condition has been held admissable. *Roosa* v. *Boston Loan Co.*, 132 Mass., 439; *Com.* v. *Sinclair*, 195 Mass., 100, 108-109 *Reck* v. *Whittlesberger*, supra; *Kinney* v. *Cadillac Motor Car Co.*, supra; *C. & A. R. R.* v. *Industrial Board*, 274 Ill., 336; Bradbury on Workmen's Compensation, Vol. 1, Pages 800-801; Boyd Workmen's Compensation, Vol. II, Sec. 560, Page 1123.

But eliminating the statements of the deceased from the case, the evidence discloses a man in good health, "a strong and rugged looking fellow" as his foreman testified, who had never had any illness unless from the ordinary "colds" prior to the day of the alleged injury; it further discloses conditions of employment where care must be taken to avoid the effects of gas which at times as one workman stated was "awful bad," and another said "had a way of affecting your throat;" "it makes your throat smart," and affects your breathing "like anything—like stifling;" that deceased went home immediately following the end of his "shift" and went to bed, the next day was in great distress and suffering from respiratory troubles, complained of pain through his mouth and down through the respiratory course; his breathing was shallow and he appeared to be in more or less of a suffocating condition; that his symptoms were not those of the ordinary respiratory diseases induced by exposure or weakened physical condition, but were similar, though more severe, to those experienced from inhaling the gases arising from the ashes by other workmen employed in the same work as the deceased; that the attending physician attributed his condition to the inhaling of an irritant, and in a week's time he died of bronchial pneumonia which in the opinion of the physician who first saw him resulted from the conditions in which he found him on his first visit on the day following the alleged accident.

While direct evidence of the alleged accident is lacking we are unable to say as a matter of law that there is no competent evidence

from which the more reasonable inference would be that the deceased through accident inhaled an excessive amount of the gases which the evidence shows were frequently present in great quantities so that it was necessary for the workmen to leave the place until the gases escaped.

The finding is supported, not, perhaps, by the only possible or even reasonable inference, but by inferences which are not unnatural nor irrational; *Mailman's Case*, supra. The evidence, we think, is sufficient to take the cause of the death out of the realm of mere speculation and fancy and conjecture and discloses a state of facts "more consistent with the commissioner's findings than with any other theory," *Papinaw* v. *Railway Co.*, 189 Mich., 441. If this were not the true state of facts the employer apparently could easily have furnished the evidence of the fellow workman who was present when the alleged accident occurred, and also the physician who attended him while in the hospital up to the time of his death. Not having done so the natural inferences to be drawn from the undisputed facts appearing in the case are strong enough to sustain the findings, *Simmons Case*, 117 Maine, 175, 178.

*Appeal dismissed.*
*Decree of sitting Justice*
*affirmed.*