## SHEPARD *v.* UNITED STATES.

No. 50.   Argued October 9, 10, 1933.—Decided November 6, 1933.

*Messrs. Harry W. Colmery* and *Charles L. Kagey,* with whom *Mr. L. M. Kagey* was on the brief, for petitioner.

*Solicitor General Biggs,* with whom *Assistant Attorney General Malloy* and *Messrs. Harry S. Ridgely* and *W. Marvin Smith* were on the brief, for the United States.

Mr. Justice Cardozo delivered the opinion of the Court.

The petitioner, Charles A. Shepard, a major in the medical corps of the United States army, has been. convicted of the murder of his wife, Zenana Shepard, at Fort Riley, Kansas, a United States military reservation. The jury having qualified their verdict by adding thereto the words " without capital punishment " (18 U.S.C. § 567), the defendant was sentenced to imprisonment for life. The judgment of the United States District Court has been affirmed by the Circuit Court of Appeals for the Tenth Circuit, one of the judges of that court dissenting. 62 F. (2d) 683; 64 F. (2d) 641. A writ of certiorari brings the case here.

The crime is charged to have been committed by poisoning the victim with bichloride of mercury. The defendant was in love with another woman, and wished to make her his wife. There is circumstantial evidence

to sustain a finding by the jury that to win himself his freedom he turned to poison and murder. Even so, guilt was contested and conflicting inferences are possible. The defendant asks us to hold that by the acceptance of incompetent evidence the scales were weighted to his prejudice and in the end to his undoing.

The evidence complained of was offered by the Government in rebuttal when the trial was nearly over. On May 22, 1929, there was a conversation in the absence of the defendant between Mrs. Shepard, then ill in bed, and Clara Brown, her nurse. The patient asked the nurse to go to the closet in the defendant's room and bring a bottle of whisky that would be found upon a shelf. When the bottle was produced, she said that this was the liquor she had taken just before collapsing. She asked whether enough was left to make a test for the presence of poison, insisting that the smell and taste were strange. And then she added the words " Dr. Shepard has poisoned me."

The conversation was proved twice. After the first proof of it, the Government asked to strike it out, being doubtful of its competence, and this request was granted. A little later, however, the offer was renewed, the nurse having then testified to statements by Mrs. Shepard as to the prospect of recovery. " She said she was not going to get well; she was going to die." With the aid of this new evidence, the conversation already summarized was proved a second time. There was a timely challenge of the ruling.

She said, " Dr. Shepard has poisoned me." The admission of this declaration, if erroneous, was more than unsubstantial error. As to that the parties are agreed. The voice of the dead wife was heard in accusation of her husband, and the accusation was accepted as evidence of guilt. If the evidence was incompetent, the verdict may not stand.

1. Upon the hearing in this court the Government finds its main prop in the position that what was said by Mrs. Shepard was admissible as a dying declaration. This is manifestly the theory upon which it was offered and received. The prop, however, is a broken reed. To make out a dying declaration the declarant must have spoken without hope of recovery and in the shadow of impending death. The record furnishes no proof of that indispensable condition. So, indeed, it was ruled by all the judges of the court below, though the majority held the view that the testimony was competent for quite another purpose, which will be considered later on.

We have said that the declarant was not shown to have spoken without hope of recovery and in the shadow of impending death. Her illness began on May 20. She was found in a state of collapse, delirious, in pain, the pupils of her eyes dilated, and the retina suffused with blood. The conversation with the nurse occurred two days later. At that time her mind had cleared up, and her speech was rational and orderly. There was as yet no thought by any of her physicians that she was dangerously ill, still less that her case was hopeless. To all seeming she had greatly improved, and was moving forward to recovery. There had been no diagnosis of poison as the cause of her distress. Not till about a week afterwards was there a relapse, accompanied by an infection of the mouth, renewed congestion of the eyes, and later hemorrhages of the bowels. Death followed on June 15.

Nothing in the condition of the patient on May 22 gives fair support to the conclusion that hope had then been lost. She may have thought she was going to die and have said so to her nurse, but this was consistent with hope, which could not have been put aside without more to quench it. Indeed, a fortnight later, she said to one of her physicians, though her condition was then grave,

" You will get me well, won't you? " Fear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be " a settled hopeless expectation " (Willes, J. in *Reg.* v. *Peel,* 2 F. & F. 21, 22) that death is near at hand, and what is said must have been spoken in the hush of its impending presence. *Mattox* v. *United States,* 146 U.S. 140, 151; *Carver* v. *United States,* 160 U.S. 553; 164 U.S. 694; *Rex* v. *Perry,* [1909] 2 K.B. 697; *People* v. *Sarzano,* 212 N.Y. 231, 235; 106 N.E. 87; 3 Wigmore on Evidence, §§ 1440, 1441, 1442, collating the decisions. Despair of recovery may indeed be gathered from the circumstances if the facts support the inference. *Carver* v. *United States, supra;* Wigmore, Evidence, § 1442. There is no unyielding ritual of words to be spoken by the dying. Despair may even be gathered though the period of survival outruns the bounds of expectation. Wigmore, § 1441. What is decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture. The patient must have spoken with the consciousness of a swift and certain doom.

What was said by this patient was not spoken in that mood. There was no warning to her in the circumstances that her words would be repeated and accepted as those of a dying wife, charging murder to her husband, and charging it deliberately and solemnly as a fact within her knowledge. To the focus of that responsibility her mind was never brought. She spoke as one ill, giving voice to the beliefs and perhaps the conjectures of the moment. The liquor was to be tested, to see whether her beliefs were sound. She did not speak as one dying, announcing to the survivors a definitive conviction, a legacy of knowledge on which the world might act when she had gone.

The petitioner insists that the form of the declaration exhibits other defects that call for its exclusion, apart from the objection that death was not imminent and that

hope was still alive. Homicide may not be imputed to a defendant on the basis of mere suspicions, though they are the suspicions of the dying. To let the declaration in, the inference must be permissible that there was knowledge or the opportunity for knowledge as to the acts that are declared. Wigmore, § 1445 (2). The argument is pressed upon us that knowledge and opportunity are excluded when the declaration in question is read in the setting of the circumstances. On the one side are such cases as *Berry v. State*, 63 Ark. 382; 38 S.W. 1038; *State v. Wilks*, 278 Mo. 481; 213 S.W. 118; *State v. Williams*, 67 N.C. 12; *State v. Jefferson*, 125 N.C. 712; 34 S.E. 648; *Shaw v. People*, 3 Hun 272; 63 N.Y. 36; *Stewart v. Commonwealth*, 235 Ky. 670, 679; 32 S.W. (2d) 29; and *Commonwealth v. Griffith*, 149 Ky. 405; 149 S.W. 825; on the other, *Shenkenberger v. State*, 154 Ind. 630; 57 N.E. 519; *State v. Kuhn*, 117 Ia. 216, 228; 90 N.W. 733; *Fults v. State*, 83 Tex. Cr. 602; 204 S.W. 108; *Cook v. State*, 90 Tex. Cr. 424; 235 S.W. 875; cf. the cases cited in 11 A.L.R. 567, note, and 25 A.L.R. 1370, note. The form is not decisive, though it be that of a conclusion, a statement of the result with the antecedent steps omitted. Wigmore, § 1447. " He murdered me," does not cease to be competent as a dying declaration because in the statement of the act there is also an appraisal of the crime. *State v. Mace*, 118 N.C. 1244; 24 S.E. 798; *State v. Kuhn, supra.* One does not hold the dying to the observance of all the niceties of speech to which conformity is exacted from a witness on the stand. What is decisive is something deeper and more fundamental than any difference of form. The declaration is kept out if the setting of the occasion satisfies the judge, or in reason ought to satisfy him, that the speaker is giving expression to suspicion or conjecture, and not to known facts. The difficulty is not so much in respect of the governing principle as in its application to varying and equivocal conditions. In this case, the ruling that there

was a failure to make out the imminence of death and the abandonment of hope relieves us of the duty of determining whether it is a legitimate inference that there was the opportunity for knowledge. We leave that question open.

2. We pass to the question whether the statements to the nurse, though incompetent as dying declarations, were admissible on other grounds.

The Circuit Court of Appeals determined that they were. Witnesses for the defendant had testified to declarations by Mrs. Shepard which suggested a mind bent upon suicide, or at any rate were thought by the defendant to carry that suggestion. More than once before her illness she had stated in the hearing of these witnesses that she had no wish to live, and had nothing to live for, and on one occasion she added that she expected some day to make an end to her life. This testimony opened the door, so it is argued, to declarations in rebuttal that she had been poisoned by her husband. They were admissible, in that view, not as evidence of the truth of what was said, but as betokening a state of mind inconsistent with the presence of suicidal intent.

(a) The testimony was neither offered nor received for the strained and narrow purpose now suggested as legitimate. It was offered and received as proof of a dying declaration. What was said by Mrs. Shepard lying ill upon her deathbed was to be weighed as if a like statement had been made upon the stand. The course of the trial makes this an inescapable conclusion. The Government withdrew the testimony when it was unaccompanied by proof that the declarant expected to die. Only when proof of her expectation had been supplied was the offer renewed and the testimony received again. For the reasons already considered, the proof was inadequate to show a consciousness of impending death and the abandonment of hope; but inadequate though it was, there can be no

doubt of the purpose that it was understood to serve. There is no disguise of that purpose by counsel for the Government. They concede in all candor that Mrs. Shepard's accusation of her husband, when it was finally let in, was received upon the footing of a dying declaration, and not merely as indicative of the persistence of a will to live. Beyond question the jury considered it for the broader purpose, as the court intended that they should. A different situation would be here if we could fairly say in the light of the whole record that the purpose had been left at large, without identifying token. There would then be room for argument that demand should have been made for an explanatory ruling. Here the course of the trial put the defendant off his guard. The testimony was received by the trial judge and offered by the Government with the plain understanding that it was to be used for an illegitimate purpose, gravely prejudicial. A trial becomes unfair if testimony thus accepted may be used in an appellate court as though admitted for a different purpose, unavowed and unsuspected. *People* v. *Zackowitz*, 254 N.Y. 192, 200; 172 N.E. 466. Such at all events is the result when the purpose in reserve is so obscure and artificial that it would be unlikely to occur to the minds of uninstructed jurors, and even if it did, would be swallowed up and lost in the one that was disclosed.

(b) Aside, however, from this objection, the accusatory declaration must have been rejected as evidence of a state of mind, though the purpose thus to limit it had been brought to light upon the trial. The defendant had tried to show by Mrs. Shepard's declarations to her friends that she had exhibited a weariness of life and a readiness to end it, the testimony giving plausibility to the hypothesis of suicide. Wigmore, § 1726; *Commonwealth* v. *Trefethen*, 157 Mass. 180; 31 N.E. 961. By the proof of these declarations evincing an unhappy state of mind the defendant opened the door to the offer by the Government

of declarations evincing a different state of mind, declarations consistent with the persistence of a will to live. The defendant would have no grievance if the testimony in rebuttal had been narrowed to that point. What the Government put in evidence, however, was something very different. It did not use the declarations by Mrs. Shepard to prove her present thoughts and feelings, or even her thoughts and feelings in times past. It used the declarations as proof of an act committed by some one else, as evidence that she was dying of poison given by her husband. This fact, if fact it was, the Government was free to prove, but not by hearsay declarations. It will not do to say that the jury might accept the declarations for any light that they cast upon the existence of a vital urge, and reject them to the extent that they charged the death to some one else. Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed. They have their source very often in considerations of administrative convenience, of practical expediency, and not in rules of logic. When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out. Thayer, Preliminary Treatise on the Law of Evidence, 266, 516; Wigmore, Evidence, §§ 1421, 1422, 1714.

These precepts of caution are a guide to judgment here. There are times when a state of mind, if relevant, may be proved by contemporaneous declarations of feeling or intent. *Mutual Life Ins. Co.* v. *Hillmon,* 145 U.S. 285, 295; *Shailer* v. *Bumstead,* 99 Mass. 112; Wigmore, §§ 1725, 1726, 1730. Thus, in proceedings for the probate of a will, where the issue is undue influence, the declarations of a testator are competent to prove his feelings for his relatives, but are incompetent as evidence of his conduct or of theirs. *Throckmorton* v. *Holt,* 180 U.S. 552,

571, 572; 573; *Waterman* v. *Whitney*, 11 N.Y. 157; *Matter of Kennedy*, 167 N.Y. 163, 172; 60 N.E. 442. In suits for the alienation of affections, letters passing between the spouses are admissible in aid of a like purpose, Wigmore, § 1730; *Ash* v. *Prunier*, 105 Fed. 722; *Mutual Life Ins. Co.* v. *Hillmon, supra*, p. 297; *Jameson* v. *Tully*, 178 Cal. 380; 173 Pac. 577; *Cottle* v. *Johnson*, 179 N.C. 426; 102 S.E. 769; *Curtis* v. *Miller*, 269 Pa. 509, 512; 112 Atl. 747. In damage suits for personal injuries, declarations by the patient to bystanders or physicians are evidence of sufferings or symptoms (Wigmore, §§ 1718, 1719), but are not received to prove the acts, the external circumstances, through which the injuries came about. Wigmore, § 1722; *Amys* v. *Barton*, [1912] 1 K.B. 40; *C. & A. R. Co.* v. *Industrial Board*, 274 Ill. 336; 113 N.E. 629; *Peoria Cordage Co.* v. *Industrial Board*, 284 Ill. 90; 119 N.E. 996; *Larrabee's Case*, 120 Me. 242; 113 Atl. 268; *Maine* v. *Maryland Casualty Co.*, 172 Wis. 350; 178 N.W. 749. Even statements of past sufferings or symptoms are generally excluded, (Wigmore, § 1722 [b]; *Cashin* v. *N. Y., N. H. & H. R. Co.*, 185 Mass. 543; 70 N.E. 930), though an exception is at times allowed when they are made to a physician. *Roosa* v. *Loan Co.*, 132 Mass. 439, 440; *C. C. C. & I. R. Co.* v. *Newell*, 104 Ind. 264, 271; 3 N.E. 836; *contra*, *Davidson* v. *Cornell*, 132 N.Y. 228, 237; 30 N.E. 573. So also in suits upon insurance policies, declarations by an insured that he intends to go upon a journey with another, may be evidence of a state of mind lending probability to the conclusion that the purpose was fulfilled. *Mutual Life Ins. Co.* v. *Hillmon, supra*. The ruling in that case marks the high water line beyond which courts have been unwilling to go. It has developed a substantial body of criticism and commentary.* Decla-

---

*Maguire, The Hillmon Case, 38 Harvard L. Rev., 709, 721, 727; Seligman, An Exception to the Hearsay Rule, 26 Harvard L. Rev. 146; Chafee, Review of Wigmore's Treatise, 37 Harvard L. Rev., 513, 519.

rations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored.

The testimony now questioned faced backward and not forward. This at least it did in its most obvious implications. What is even more important, it spoke to a past act, and more than that, to an act by some one not the speaker. Other tendency, if it had any, was a filament too fine to be disentangled by a jury.

The judgment should be reversed and the cause remanded to the District Court for further proceedings in accordance with this opinion.

*Reversed.*