## UNITED STATES of America

### v.

**Joseph COSENTINO, Bernard Walters, also known as "Bernard Walton", James Jones, Eric West, Usey Odom, Eugene Austin, also known as "Sandy Austin", and Marvin Duggins, Defendants.**

### No. 83 CR 535.

United States District Court, E.D. New York, Criminal Division.

March 5, 1984.

---

Raymond J. Dearie, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Julius M. Wasserstein, New York City, for defendants.

MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

During the course of this criminal trial defendant James Jones sought to admit certain statements he made shortly after he was arrested. Relying upon *United States v. DiMaria*, 727 U.S. 265 (2d Cir. 1984), Jones argued that his protestations of innocence, made at the time he was being "processed" by FBI agents, were admissible under the state of mind exception to the hearsay rule. Fed.R.Evid. 803(3) (hereafter "FRE"). I excluded those statements, and Jones was convicted of conspiring to receive and possess goods stolen from foreign commerce. 18 U.S.C. § 371. He was acquitted, however, on two substantive counts of receipt and possession of goods stolen from foreign commerce, 18 U.S.C. § 659, and transportation of stolen goods in interstate commerce. 18 U.S.C. § 2314. I issue this opinion to amplify my oral ruling during the trial and to complete the record for appellate purposes.

*Facts*

The seven defendants were indicted for various crimes arising out of their conspiracy to feign a truck hijacking and to steal $300,000 worth of shirts from the truck. Five of the defendants pleaded guilty. Defendants Jones and Walters chose to go to trial.

Jones was accused of conspiracy to possess merchandise that was stolen from foreign commerce, and he was also charged with the substantive counts of possessing the same stolen shirts and transporting them in interstate commerce. His defense was that he had been enlisted by certain friends to go to New Jersey, put the stolen shirts on the truck, bring them back to

New York, and help unload them. According to his testimony at trial, it was not until a week after the hijacking that Jones realized the shirts were stolen.

Rodney M. Davis, a special agent of the FBI testified as a government witness. As the case agent, Davis was the principal law enforcement officer assigned to investigate the hijacking. He arrested Jones on July 29, 1983.

Later that day, Agent Davis interviewed Jones and transcribed his statements on to a form entitled "FD 302." Agent Davis's 302 recited that in April, 1982, Jones had gone to New Jersey to bring merchandise back to New York on a truck. It further states that "Jones didn't know truck or merchandise on truck was stolen. Jones's job was to only help transport and unload merchandise from truck." Jones sought to elicit these statements during the testimony of Agent Davis. The Government objected, arguing that a defendant's prior consistent statements are admissible, if at all, only after the defendant has been impeached. Jones countered that, under *Di-Maria*, the statements were admissible even if Jones elected not to testify.

### Discussion

■ Jones's statement to Agent Davis is hearsay, since it is offered to prove its truth, *i.e.*, that Jones was ignorant of the conspiracy. Defendant concedes as much, but argues that the statement is admissible under FRE 803(3) which admits hearsay if it is:

the statement of the declarant's then existing state of mind ... (such as intent, plan, motive, design, mental feeling, ...), but not including a statement of memory or belief to prove the fact remembered or believed....

I hold that this exception does not apply to Jones's exculpatory statement.

■ The state of mind exception to the hearsay rule evolved from necessity—there was often no other way to prove a person's state of mind—and from the assumption that such statements are trustworthy because they are the spontaneous expressions of what is then on the declarant's mind. While there is always a risk that the declarant is lying, there is no risk of faulty perception (the declarant can obviously perceive his own state of mind). More importantly, there is no risk of faulty recollection because the declarant is expressing his present state of mind, not his past state of mind.

■ There is, accordingly, a radical distinction between the statement: "I hate X" (admissible under FRE 803(3)) and the statement: "last year I hated X" (inadmissible). In the former statement the only serious hearsay risk is that the declarant is lying. In the latter, all the hearsay risks are present: the declarant may misperceive the state of mind he possessed one year ago; and his recollection may have dimmed over the year, and he may be lying. A statement about a past state of mind does not fall within the state of mind exception to the hearsay rule because in the words of Justice Cardozo, "the testimony now questioned face[s] backward and not forward...." *Shepard v. United States*, 290 U.S. 96, 106, 54 S.Ct. 22, 26, 78 L.Ed. 196 (1933).

A trial judge has some discretion in deciding what is a statement of present state of mind. If, for example, the issue is the declarant's state of mind on a Monday, his declarations on Tuesday about his state of mind might be admissible as circumstantial evidence that he had the same state of mind on Monday. This would be "on the theory that under these circumstances the 'stream of consciousness has enough continuity so that we may expect to find the same characteristics for some distances up or down the current.'" *Watenpaugh v. State Teachers' Retirement*, 51 Cal.2d 675, 679, 336 P.2d 165, 168 (1959). *United States v. Gigante*, 729 Fed. 78 (2d Cir. 1984).

■ In the instant case, however, Jones's statements were made to Agent Davis fifteen months after the hijacking and thus are irrelevant. It can no more be argued that Jones's statement in July, 1983

about his present state of mind is relevant evidence that he had the same state of mind in April, 1982, than it can be argued that the condition of the Mississippi River in Minnesota is some evidence of its condition as it courses through Louisiana. Jones's statements are therefore inadmissible.

Jones points to the recent decision of the Second Circuit in *United States v. DiMaria, supra,* which on its facts is remarkably similar to the instant case. When properly analyzed, however, even *DiMaria* would exclude the defendant's exculpatory statements in this case.

DiMaria was prosecuted on a three-count indictment charging possession of *stolen* cigarettes, 18 U.S.C. § 659, possession of *contraband*[1] cigarettes, 18 U.S.C. § 2342, and conspiracy to commit both substantive offenses. 18 U.S.C. § 371.

On February 9, 1981 a truckload of cigarettes was hijacked on the New Jersey Turnpike. The loot was stored in a yard in Jersey City, New Jersey. The FBI located the yard and began a surveillance on February 14, 1981. Attention quickly focused on two principals, Billeci and Birnbaum; and the New York City Police Department began surveillances on them.

On February 17, the City detectives followed Billeci and Birnbaum to a club in Brooklyn where they met DiMaria. Eventually the hijacked cigarettes were transported from New Jersey to a storage yard at the Brooklyn Terminal Market. On February 21, the FBI raided the Brooklyn Terminal Market and caught four men loading a van with cigarettes. One of the men was DiMaria.

As in the instant case, one of the Government's principal witnesses was an FBI agent. On cross-examination, DiMaria sought to elicit from the agent that, as the agents swept in to make the arrest at the Brooklyn Terminal Market, DiMaria said, "I only came here to get some cigarettes real cheap."

DiMaria contended at trial that "cheap" cigarettes "meant bootleg cigarettes, *i.e.,* cigarettes brought from a low-tax state for sale in a high-tax state, rather than stolen cigarettes, and that the statement thus tended to disprove the state of mind required for conviction under 18 U.S.C. § 659 [receipt of *stolen* goods]...." *United States v. DiMaria, supra,* at 270.

The threshold problem with DiMaria's statement was not one of hearsay, but of relevance. What did the statement mean? Nothing could be cheaper than stolen cigarettes and, thus construed, the statement might be inculpatory as to the receipt of stolen goods count.

Moreover, DiMaria was also on trial for possession of contraband cigarettes, *i.e.,* a quantity of bootleg cigarettes exceeding 60,000.[2] Thus, even if the statement could be interpreted as referring only to bootleg cigarettes, it might still be inculpatory as to the contraband count unless the word "some" is construed to mean a number of cigarettes less than 60,000.

Finding that the ambiguous statement of DiMaria was subject to interpretation, the Court of Appeals concluded that the question was one for the jury and, thus, the statement was relevant.

Turning then to the hearsay problem, the Second Circuit held that DiMaria's statement was admissible under the state of mind exception. DiMaria had stated, "or so the jury could find that his existing state of mind was to possess bootleg cigarettes, not stolen cigarettes. It was not offered to prove that the cigarettes were not stolen cigarettes but only to show that

---

**1.** "Contraband" cigarettes are defined as "a quantity in excess of 60,000 cigarettes, which bear no evidence of the payment of applicable State cigarette taxes in the State where such cigarettes are found...." 18 U.S.C. § 2341(2).

**2.** Because bootleg cigarettes are brought from a low-tax State for illegal sale in a high-tax State

they would "bear no evidence of the applicable State cigarette taxes in the State in which they are found...." 18 U.S.C. § 2341(2). Where the quantity of such bootleg cigarettes is "in excess of 60,000," it then comes within the statutory definition of "contraband" cigarettes. *Id.*

DiMaria did not think they were." *United States v. DiMaria, supra,* slip op. at 1532.

 Jones would have the Court read *DiMaria* to hold that any exculpatory statement uttered by a defendant at the time of his arrest—or shortly thereafter under the "stream of consciousness" corollary discussed in *Watenpaugh v. State Teachers' Retirement, supra,*—is admissible under FRE 803(3)'s state of mind exception to the hearsay rule. The case should not be read so broadly.

DiMaria's statement was admissible not because it was made contemporaneously with his arrest, but because it was made *in flagrante delicto.* As such, it did not "look back" to an earlier time, as does Jones's statement, but rather it expressed DiMaria's state of mind as it existed while the crime was in progress. Had DiMaria not been arrested for some fifteen months, as in Jones's case, any exculpatory statement uttered at the time of that arrest would necessarily constitute a statement of memory being used to prove the fact remembered.[3] *See United States v. Marin,* 669 F.2d 73, 84 (2d Cir.1982).

Thus, the assertion that the defendant's exculpatory statement was made contemporaneously with his arrest will not, without more, suffice to win admission under FRE 803(3). The defendant must further demonstrate that the statement does not implicate the hearsay risk of looking backward to a crime completed long ago. This Jones cannot do.

Accordingly, the statements in question are inadmissible hearsay and must be excluded.

SO ORDERED.

---

**3.** Significantly, Jones's state of mind at the time of his arrest is legally immaterial. The issue is what was his state of mind when he was handling the stolen shirts fifteen months earlier.