916 So.2d 185 (2005)
Thomas GARZA, Sr., Sandra Garza, and Thomas Garza, Jr.
v.
DELTA TAU DELTA FRATERNITY NATIONAL, Delta Tau Fraternity Local, Southeastern Louisiana University, Hammond City Police Department, Officer Edwin Bergeron, Paul Upshaw, and ABC Insurance Company.
No. 2004 CW 1484.
Court of Appeal of Louisiana, First Circuit.
May 6, 2005.
*186 Greg A. Rozas, Baton Rouge, Counsel for Plaintiffs/Respondents, Thomas Garza, Sr., Sandra Garza, and Thomas Garza, Jr.
*187 George F. Kelly, III, New Orleans, Counsel for Defendant/Respondent, Paul Upshaw.
Thomas E. Balhoff, Judith R. Atkinson, Carlton Jones, III, Baton Rouge, Counsel for Defendants/ Relators, Delta Tau Delta International Fraternity and Delta Tau Delta International Fraternity, Epsilon Phi Chapter.
Christopher M. Moody, Hammond, Counsel for Defendants/Respondents, City of Hammond and Officer Edwin Bergeron.
Karen L. Godwin, Baton Rouge, Counsel for Defendant/Respondent, State of Louisiana, through the Board of Supervisors for the University of Louisiana System and Southeastern Louisiana University.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
CARTER, C.J.
This matter comes before this court on a writ of certiorari granted to consider the res nova issue of whether a suicide note can qualify as a dying declaration, such that it may be admissible as an exception to the hearsay rule.

FACTS AND PROCEDURAL HISTORY
On April 9, 2001, Courtney Garza, a twenty-one-year-old student at Southeastern University in Hammond, committed suicide by hanging herself in her parents' Baton Rouge home. Courtney left behind a hand-written, three-page suicide note, written on front and back, dated "04/08/01 Sunday 12:30."
On January 15, 2002, Thomas Garza, Sr. and Sandra Garza, Courtney's parents, and Thomas Garza, Jr., Courtney's brother, filed suit against Delta Tau Delta National Fraternity (DTD National); Delta Tau Delta International Fraternity, Epsilon Phi Chapter (DTD Local); the State of Louisiana through the Board of Supervisors for the University of Louisiana System and Southeastern Louisiana University (SLU); the Hammond City Police Department; Officer Edwin Bergeron; Paul Upshaw; and an unnamed insurance company.
In their petition, the Garzas make numerous allegations regarding events preceding Courtney's death. Specifically, the Garzas maintain that Courtney's death was proximately caused by the concomitant negligence of the defendants. In particular, the Garzas allege defendant Paul Upshaw, a member of DTD Local at SLU, raped Courtney on February 6, 2001, at an off-campus residence. The Garzas allege SLU failed to supervise the activities of DTD Local and failed to provide adequate crisis intervention to Courtney.
The Garzas case against the plaintiffs is based in large part on Courtney's suicide note. DTD National, DTD Local, Upshaw, and SLU filed motions in limine seeking to exclude the suicide note as inadmissible hearsay. On June 15, 2004, the trial court signed a judgment, denying in part the defendants' motions in limine. The last part of the note containing farewells was stricken, as the trial court found the unfair prejudicial effect of that part of the note outweighed its probative value. However, the remainder of the suicide note was declared admissible as a dying declaration.
From this ruling, DTD National, DTD Local, Upshaw, and SLU timely filed applications for supervisory review. This application for supervisory review concerns defendants/relators, DTD National and DTD Local.[1] After careful review of the *188 record, law, and jurisprudence, this application for supervisory writs is denied.

DISCUSSION
The sole issue before this court is whether the trial court erred by admitting into evidence Courtney's suicide note pursuant to the dying declaration exception to the hearsay rule found in Louisiana Code of Evidence article 804 B(2).
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801C. Testimony concerning the contents of written communications is hearsay unless the author of the document is present and subject to cross-examination. State v. Joya, 354 So.2d 543, 545 (La.1978). Clearly, Courtney's note is hearsay. Hearsay evidence is inadmissible except as otherwise provided by the Louisiana Code of Evidence or other legislation. LSA-C.E. art. 802.
"A statement made by a declarant while believing that [her] death was imminent, concerning the cause or circumstances of what [she] believed to be [her] impending death" is not excluded by the hearsay rule if the declarant is unavailable as a witness. LSA-C.E. art. 804 B(2). A court may look at the facts and circumstances surrounding the out-of-court statement to determine whether the declarant made the statements in the belief that death was imminent. United States v. Angleton, 269 F.Supp.2d 878, 883 (S.D.Tex. 2003). If the circumstances do not satisfactorily disclose the declarant recognizes the solemn situation in which she is placed, the declaration should be rejected. Mattox v. United States, 146 U.S. 140, 152, 13 S.Ct. 50, 54, 36 L.Ed. 917 (1892). The length of time elapsing between the making of the declaration and death is to be considered. The impression of an immediate death, not the rapid succession of death, is what makes the statement admissible. Mattox, 146 U.S. at 151, 13 S.Ct. at 54.
Relators contend death was not imminent as there is no evidence Courtney was injured at the time the note was written. As observed by relators, most of the jurisprudence involves dying declarations made after wounds have been inflicted on a declarant by a third person. However, there is no requirement in Article 804 B(2) that a wound or injury be inflicted prior to the making of a dying declaration. Nor does Article 804 B(2) require that death be by the hand of a third party. There is nothing in Article 804 B(2) to prohibit a suicide note from being admitted as a dying declaration.
Courtney's written words expressly indicate an awareness of her impending death. She writes, "I thought I would've cut it short sometime before now. . . . I'm still scared right now as I plan it out, but I'm really doing it this time." Her closing words are, "This is goodbye." The contents of Courtney's note reflect a settled expectation  a realization  that death was at hand. See Shepard v. United States, 290 U.S. 96, 100, 54 S.Ct. 22, 24, 78 L.Ed. 196 (1933).
Perhaps the greatest evidence that the statement was written with a belief that death was imminent, is the fact that Courtney took her own life soon after writing the dated note. The note is dated April 8, 2001, at 12:30; Courtney died April 9, 2001. Compare State v. Satterfield, 193 W.Va. 503, 457 S.E.2d 440, 450 (1995), wherein statements in a suicide note referenced events occurring less than twenty-four hours before the suicide. The suicide *189 note was admissible as a dying declaration. In Angleton, several suicide notes were offered and rejected as dying declarations. Two dated notes were written two weeks or more before the suicide, not "very shortly before the suicide." Angleton, 269 F.Supp.2d at 888. And, the evidence was insufficient to support a finding that the declarant committed suicide "soon after writing" the relevant parts of the undated notes. Id. Unlike Angleton, in the instant case, Courtney died soon after writing her dated note.
To qualify as a dying declaration, the statement also must relate to the cause or circumstances of the declarant's death. LSA-C.E. art. 804 B(2). The handwritten note offers insight into the circumstances leading to the suicide that shortly followed. Courtney wrote, "I guess I'll begin [and] explain what happened to me this semester. . . . I hope you can read this. It explains it all for you." Courtney recounts past events, explaining the causes and circumstances she perceived to have brought her to suicide. See Angleton, 269 F.Supp.2d at 888.
Having concluded Courtney's note fully meets the two-part requirement of Article 804 B(2) and, therefore, is a dying declaration does not end the inquiry. To be admissible, a dying declaration must be relevant and its probative value must outweigh any unfair prejudicial effects.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable that it would be without the evidence. LSA-C.E. art. 401. Clearly the suicide note is relevant to plaintiffs' claims as it provides a chronology of the events plaintiffs allege led to Courtney's death.
But, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of such things as unfair prejudice, confusion of the issues, or misleading the jury. LSA-C.E. art. 403. Clearly, the more probative the evidence, the more prejudicial it is to a defendant. But, Article 403 only requires the court balance the probative value of evidence against the danger of unfair prejudice, not any prejudice. Unfair prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable. See State v. Hamilton, 99-523 (La.App. 3 Cir. 11/3/99), 747 So.2d 164, 170. Unfair prejudice occurs when the evidence provokes an emotional response or affects a jury's attitude towards a defendant that is wholly apart from its judgment as to guilt, or in the case of civil litigation, liability. See id.
The use of the word "may" in Article 403 emphasizes that the trial court has great discretion in assessing the probative value of evidence. See Stockstill v. C.F. Industries, Inc., 94-2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, 813, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428; see also LSA-C.E. art. 104 A. Under the unique facts of this case, we do not find the trial court abused its discretion in finding the note was not unfairly prejudicial.
Having concluded the suicide note is admissible as a dying declaration, we pretermit discussion of its admissibility under LSA-C.E. art. 803(3) as proof of Courtney's then existing state of mind.

CONCLUSION
In conclusion, we hold that under the Louisiana Code of Evidence a suicide note can qualify as a dying declaration and, as such, may be admissible as an exception to the general rule that hearsay is inadmissible. The suicide note in the present case qualifies as a dying declaration as the evidence indicates it was written upon belief *190 that death was imminent and the note concerns what the declarant believed to be the cause and circumstances leading to her death. Moreover, the content of the note is highly relevant, and the note's probative value far outweighs any unfair prejudicial effects. Finding no error in the trial court's judgment finding the note, as edited, admissible, we deny the writ.
WRIT DENIED.
McDONALD, J., dissents and assigns reasons.
McDONALD, J. dissenting.
Although I have the utmost respect for the excellent analysis of my colleagues, I am not convinced that the note in this case meets the criteria for a dying declaration. The "classic" dying declaration is made by a person near death from fatal wounds or illness, who makes a statement to a third party about who inflicted the wounds or caused the illness. The third party testifies as to the declarant's condition and the circumstances of the statement. U.S. v. Angleton, 269 F.Supp.2d 878, 885 (S.D.Tex.2003). Such a statement is made spontaneously by one who is unexpectedly facing imminent certain death. In contrast, a suicide note is a deliberate communication composed in advance of the act itself. The writer intends for the note to be found and read. Therefore, the writer may carefully and methodically select the words she wishes to use. The author has the opportunity tell some things and omit others, to accuse or exonerate, to clarify or confound, or even seek revenge against someone who is blameless.
A person contemplating suicide, and leaving a note to be found after his death, would not be in fear of legal punishment. The writer of a suicide note might have a motive to implicate another other than the truth. He might be vindictive for reasons unrelated to the statements in the note. A declarant who has decided to commit suicide would have no fear, perhaps other than religious convictions which may or may not be present, of punishment for the criminal act asserted or for the falsity of the note.
State v. Hodge, 655 S.W.2d 738, 742-743 (Mo.App.1983).
Additionally, in reading Ms. Garza's note as a whole, it is not clear that she intended to immediately end her life. In fact, the note is dated "4/8/01 Sunday 12:30." In their briefs the parties indicate that she committed suicide on Monday, April 9. Thus, the note was written at least 12 hours and perhaps up to 36 hours or more prior to her death.
The dying declaration is a last gasp by someone who has been unexpectedly injured; a solemn yet spontaneous statement by someone who knows and believes that they cannot be saved from immediate death. The imminence of death is critical, and the declarant must believe that all hope of recovery is lost, that the damage has been done, and that death is certain to immediately follow. There is no hope, no ability to prevent or stop the looming and impending death. A spontaneous, unrehearsed statement by one who is a victim of violence and mortally wounded, is far different from a written, planned, and choreographed statement by one contemplating suicide. Not only are the motives, but the person contemplating suicide can change her mind and choose to live, while the mortally wounded victim of violence cannot.
For these reasons I do not believe the suicide note in this case is admissible as a dying declaration and I respectfully dissent.
NOTES
[1] The application for supervisory writs filed on behalf of SLU is the subject matter of a separate opinion, docket number 2004 CW 1567, also rendered this day.