JOURNAL ENTRY AND OPINION
Jerry Young appeals from a judgment of the common pleas court entered pursuant to a bench trial finding him guilty of the murder of Kelly Madison, and of having a weapon while under a disability. On appeal, Young argues that his conviction is based on hearsay evidence, that the court denied his right to confront witnesses, and that the evidence presented did not sufficiently support a guilty verdict. After careful review, we reject these contentions and affirm the judgment of the trial court.
The record reveals that Jerry Young and Kelly Madison were involved in a ten-year relationship, which became strained in the months preceding her death. Madison had intended to leave Young and move out of town. She expressed her fear and concerns about Young to her friends, who had seen his possessive and controlling behavior toward her on numerous occasions. On June 15, 1995, the night before the murder, Madison had a visit from her new boyfriend, and afterwards, had a heated argument with Young over the phone. The next morning, Madison stayed home from work, recovering from minor foot surgery. Kamille, her daughter, brought a glass of water into her mother's room before leaving for work, and did not remember seeing a set of keys in her mother's room at that time. Madison's coworker, Angela Harmon, called her at 9:30 a.m. but got no answer and left a message on the answering machine. Ten minutes later, Madison returned her call stating that Young had just left, but was coming back to drop off his set of keys to her house. Madison told Harmon that she was going to end the relationship with Young as soon she got the keys back. Harmon called Madison again at 11:45 a.m. to cancel their previously arranged lunch plan. She asked at that time if Madison had received the keys from Young and she responded no. Soon afterwards the victim called Laverne Jones-Gore, her landlord, about needing help to move a chair to the bathroom so that she could bathe safely in light of her foot surgery. Gore asked the victim whether she had gotten her keys back from Young, and learned that she had not. When Gore pressed the victim about how she was going to get the keys back, the victim stated I'll take care of that. Minutes later, the victim called Gore again and told her that she would not need her help anymore and she sounded odd and acted if she did not want to talk.
Israel Marquez, a nine-year old who lived four houses away from Madison, testified at trial that he saw a man whom he recognized as Madison's boyfriend driving down the street in a dark green Jeep Grand Cherokee before lunch. Within about twenty-five minutes, Israel heard a loud boom coming from the direction of the house.
Between 12:30 and 12:45, Kamille called her mother but got no answer. At 4:00 p, m., she arrived at the house to find her mother dead from a single gunshot wound to her chest. A police officer arrived, finding Kamille hysterical, screaming look what he did. Jerry, Jerry, he killed my mother. The police did not find any sign of forced entry or disturbance around the house, and the victim had not been sexually assaulted. The police found a set of green coated keys on a chair next to the bed where the victim's body lay. Israel told the police who investigated that night that he had seen a green Jeep in the area earlier that day. Nearly a year later, when the police showed him two photos of Young, he identified Young as the driver of the Jeep.
On October 10, 1995, a grand jury indicted Young for the murder of Madison and for having a weapon while under a disability. Young waived a jury, and a bench trial began on June 17, 1997. At trial, the state presented numerous witnesses who testified to Madison's fear of Young and her intention to end her relationship with him, as well as to what had transpired on the morning of June 16, 1995.
On the fourth day of trial, after the defense had called three witnesses, Young absconded without testifying, and the defense thereafter rested its case. Subsequently, on June 27, 1997, the trial court found Young guilty of murder and having a weapon while under a disability, and because his whereabouts were unknown, the court issued a capias for his arrest. On February 18, 2000, the Federal Bureau of Investigation located Young in New Orleans, returned him to Cleveland, and subsequently, on April 17, 2000, the court sentenced him to consecutive terms of fifteen years to life for the murder charge, three years for the gun specification, and three to five years for having a weapon under disability. Young now appeals, raising five assignments of error for our review. Because Young's first and second assignments of error both concern hearsay evidence, we consider them together. They state:
 I. THE COURT ERRED WHEN DESPITE DEFENSE OBJECTIONS IT ALLOWED THE STATE, OSTENSIBLY UNDER FAVOR OF EVIDENCE RULES 802 AND 803, TO PRESENT AS SUBSTANTIVE PROOF CONSIDERABLE INADMISSABLE HEARSAY EVIDENCE, WHICH EVIDENCE THE COURT INDISPUTABLY RELIED ON IN FINDING THE ACCUSED GUILTY AS CHARGED.
 II. THE COURT ERRED WHEN IT FAILED TO EXCLUDE AS HEARSAY VARIOUS STATEMENTS SUPPOSEDLY MADE BY CERTAIN WITNESSES TO THE DECEDENT, WHICH STATEMENTS DID NOT QUALIFY FOR ADMISSION UNDER ANY KNOWN RULE OF EVIDENCE.
Young complains that the trial court admitted and relied on hearsay evidence to find him guilty. The state counters that the court properly admitted the challenged statements in accordance with the rules of evidence.
The issue for our review then concerns whether the testimony objected to by Young constitutes inadmissible hearsay.
The statements Young challenged as hearsay fall into three categories: (1) statements by the decedent to several witnesses, specifically, those expressing her fear of Young, those expressing her intent to end her relationship with him, and those relating to her waiting for Young to return her keys on the morning of June 16, 1995; (2) witness testimony as to what statements were made to the decedent in connection with the decedent's concerns about Young; and (3) Kamille's statement that Jerry killed her mother.
Pursuant to Evid.R. 402(3):
 All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme court of Ohio. Evidence which is not relevant is not admissible.
Evid.R. 802 states that:
 Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.
Evid.R. 801(C) provides the definition of hearsay:
 Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
As a threshold matter, we find all of the challenged evidence relevant in that they aid in establishing either the probable identity of the decedent's killer or Young's motive to kill. They are therefore admissible into evidence, unless they violate some rules of evidence. The contention here concerns whether these out of court statements fall within the exceptions to the hearsay rule provided in Evid.R. 803.
We consider first the group of statements made by the decedent to the witnesses. Young contends that these out of court statements do not fall within any hearsay exceptions, while the state asserts they fit under the state of mind exception pursuant to Evid.R 803(3). The issue here then concerns whether the trial court properly admitted statements made by the decedent as state of mind exceptions.
Evid. R. 803(3) provides the state of mind exception to the hearsay rule:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
 (3)Then existing, mental, emotional, or physical condition.
 A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed[.] * * *
Further, the court in State v. Apanovitch (1987), 33 Ohio St.3d 19,21-22, remarked, in a footnote:
 The federal rule dealing with state of mind witnesses is identical to the Ohio rule.
 Evid.R. 803(3) operates as a vehicle for the admission of a statement such as, "I am afraid of X." 1 Weissenberger, Ohio Evid. (1985), Chapter 801 at 42, Section 803.32. Accord McCormick, Evidence (3 Ed. 1984) 853, Section 296. The critical requirement is that the statement refer to a present and not a past condition.
 Giannelli, Ohio Evidence Manual (1982), Article VIII at 36, Section 803.07. Where the statement does not relate to a "then existing" condition, it must be viewed as a narrative account formulated after time for reflection, and therefore it is not admissible under Evid.R. 803(3).
 Weissenberger, supra, at 40, Section 803.30. 33 Ohio St.3d 19 at fn 1.
In Apanovitch, the court also stated:
 Finally, the testimony sought to be introduced must point towards the future rather than the past. When the state of mind is relevant it may be proved by contemporaneous declarations of feeling or intent.
 Shepard v. United States (1933), 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196.
 Accordingly, the testimony of state-of-mind witnesses, that the victim was fearful and apprehensive, was not inadmissible hearsay and was properly admitted.
And, in State v. O'Neal (2000), 87 Ohio St.3d 402, the court there stated, at 411:
 [The decedent's] statements that she was feeling stressed and was afraid of appellant were relevant to prove her intent to end the marriage. These statements were properly admitted as evidence under Evid.R. 803(3) * * * In addition, statements about [the decedent's] plans to separate and end the marriage were also admissible under Evid.R. 803(3). State v. Sage (1987), 31 Ohio St.3d 173, 182-183, 31 OBR 375, 383, 510 N.E.2d 343, 350 (victim's statements regarding intent to break up with defendant admissible.)
Applying the state of mind rule as delineated by the Supreme Court of Ohio, we find that the decedent's statements concerning her fear of Young and her intent to leave Young fall within this exception to the hearsay rule.
Young also objected to Angela Harmon's testimony that the decedent told her earlier that morning over the phone that Jerry had just left and that he was coming back to drop off her keys as well as her testimony that she learned from the decedent around 11:45 a.m. that she still had not gotten her keys back. Because these statements related to the decedent's then existing intent or plan to wait for Young to return the keys and to end their relationship after that on the morning of June 16, 1995, the trial court did not err in admitting them. Contrary to Young's assertion that these state of mind statements are inadmissible because the victim's state of mind was not an issue in the case, we find that the decedent's state of mind regarding her fear and her intent to leave Young was an issue as it would tend to prove the probable identity of her killer and his likely motive for the killing. Therefore, the trial court did not err when it admitted the decedent's statements as state of mind exceptions to the hearsay evidence rule.
Next, we review the second category of challenged testimony concerning what various witnesses said to the deceased, i.e., lock your doors, change the locks, be careful, I asked her had he been back . . . [with] the keys, I asked her [around 11:45 a.m.] did she get her keys, I ask her [referring to the night before] why does he have to be there, I said did you get your key back, do not go anywhere with him, [you should] . . . call the police, and Jerry will kill you.
Young contends that these expressions are hearsay by implication in that they enabled the trier of fact to infer what the decedent communicated to the witnesses. The state argues that the hearsay rule does not apply to these expressions because they do not qualify as statements at all. The issue then presented concerns whether the court properly admitted these expressions stated by the witnesses to the decedent.
Evid.R. 801 defines a statement for hearsay purposes:
 (A) Statement. A statement is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion. (Emphasis added.)
The court in State v. Carter (1995), 72 Ohio St.3d 545, 549, instructed as follows:
 Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." A witness is barred on hearsay grounds from testifying as to the statements made by another only when the statement is offered to prove the truth of the matter asserted in the statement, and only where the statement falls outside any exceptions to the rule against hearsay as set forth in, e.g., Evid.R. 803 and 804. * * * [Q]uestions [as overheard by a witness] do not fall within the definition of "hearsay" because they did not constitute "assertions." An "assertion" for hearsay purposes "simply means to say that something is so, e.g., that an event happened or that a condition existed." * * * We hold that because a true question or inquiry is by its nature incapable of being proved either true or false and cannot be offered "to prove the truth of the matter asserted," it does not constitute hearsay as defined by Evid.R. 801. (Emphasis added.)
Here, the communication challenged by Young consists of various questions, warnings, and directives. As such, they are not assertive in character, because by their very nature these expressions are incapable of being proved either true or false and cannot be offered to prove the truth of the matter asserted. Therefore, such expressions fall outside of the definitions of statements pursuant to Evid.R. 801(A). Even if they were statements, the witnesses were simply describing what they had said to the decedent and the state did not offer these statements to prove the truth of the matter asserted. Consequently the trial court did not err in admitting the evidence.
Finally, Young challenges Kamille's statement that Jerry killed her mother, overheard by an officer when he arrived at the decedent's house. Young contends that it constitutes hearsay while the state argues that it qualifies as excited utterance exception. The question then concerns whether Kamille's statement falls within the excited utterance exception pursuant to Evid.R. 803(2).
The court in State v. Taylor (1993), 66 Ohio St.3d 295, quoting Potter v. Baker (1955), 162 Ohio St. 488, provides the standard of review for the excited utterance exception:
 We believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision.
In State v. Duncan (1978), 53 Ohio St.2d 215, the court set forth, in its syllabus, a four-prong test for admission of an excited utterance as an exception to the hearsay rule:
 Testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.
The court followed this test in State v. Taylor (1993), 66 Ohio St.3d 295.
Finally, Crim.R. 52(A) provides the following:
 (A) Harmless error. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.
In State v. Badinost (1994), 71 Ohio St.3d 449,465, the court applied the rule to evidence challenged by a defendant:
 Hence, given the overwhelming evidence of appellant's guilt, we find, beyond a reasonable doubt, that the outcome of appellant's trial would not have been different had the state been precluded from using the [challenged evidence]. Thus, no reversible error occurred. See Crim.R. 52(A).
In the instant case, the officer testified that he found Kamille crying, jumping up and down, yelling, [and] screaming that Jerry killed her mother. Applying the four-prong test, we find that Kamille made the statement in reaction to an occurrence startling enough to produce a nervous excitement, making her statement the unreflective and sincere expression of her actual impressions and beliefs; she also made the statement before her nervous excitement gave way to her reflective faculties; and her statement related to the circumstances of the startling event of her mother's violent death. However, Kamille did not personally observe Young killing her mother, the matter asserted in her statement. Therefore, the trial court erred in admitting the statement. Our review of the record in this case, however, reveals independent evidence of guilt, consisting of Madison's fear of Young, her intention to end the relationship after receiving Young's set of keys to her house, Israel's observance of Young driving a green Jeep down the street prior to her death, the presence of the keys at the scene of the killing, and the violent manner of her death, which the trial court could have considered in finding Young guilty beyond a reasonable doubt. The record does not reflect that the outcome of the trial would have been different if the state had been precluded from offering this evidence. Thus, no reversible error occurred. Accordingly, we overrule this assignment of error.
The third assignment of Error states:
 III. THE APPELLANT'S RIGHT OF CONFRONTATION WAS VIOLATED, AND HE WAS DENIED A FAIR TRIAL, BY THE COURT'S ADMISSION OF, AND RELIANCE ON, CERTAIN EVIDENCE CHALLENGED AS BEING HEARSAY.
Young contends that the court violated his rights of confrontation when it admitted statements attributed to the decedent pursuant to a hearsay exception without making a separate inquiry of whether the admission violated his rights of confrontation. The state maintains that the facts of the instant case do not warrant a separate inquiry regarding Young's rights of confrontation. The issue then concerns whether the trial court admitted evidence in violation of Young's rights of confrontation accorded by the Ohio's constitution.
Section 10, Article I, Ohio Constitution provides that a party accused shall be allowed to meet the witnesses face to face. Young further refers us to State v. Storch (1993), 66 Ohio St.3d 280, and Lilly v. Virginia (1999) 527 U.S. 116, for the proposition that a trial court's admission of hearsay evidence, even if under some recognized hearsay rule, may still violate an accused's right of confrontation. In other words, inclusion of a statement pursuant to a state hearsay exception does not guarantee compliance with the confrontation clause.
Young's reliance on these cases is misplaced. In Storch, the defendant challenged out of court statements made by a three-year-old victim. The court held that the defendant's right of confrontation would require live testimony where reasonably possible and that the admissibility of the child's statements pursuant to Evid. R. 807, which deals with child statements in abuse cases, should be determined in a pretrial hearing. Accordingly, we distinguish our case from this. In Lilly v. Virginia, the court held that the admission of the confession of a nontestifying accomplice violated a defendant's confrontation rights even though the statement qualified under the against penal interest exception to the hearsay rule. In both these cases, the out of court statements challenged were made by a declarant who was available but not testifying, hence triggering the confrontation clause analysis. In the instant case, the declarant whose statements Young challenges is deceased. Furthermore, Young had ample opportunity to cross-examine the witnesses who testified regarding what the decedent had said. Therefore, the court's admission of the decedent's statements under a hearsay exception does not involve the confrontation clause. Consequently, we overrule this assignment of error.
Young's fourth assignment of error states that:
 IV. THE COURT ERRED WHEN IT FAILED TO EXCLUDE THE ASSERTED IDENTIFICATION TESTIMONY PROVIDED BY THE WITNESS ISRAEL MARQUEZ.
Young contends that Israel Marquez identified Young under improper suggestion by the police, rendering his identification unreliable. The state counters that Israel knew Young before he saw him near the scene of the murder and therefore the police's use of photos containing only Young had not been impermissibly suggestive.
In State v. Thompson (1998) 127 Ohio App.3d 511, the court stated:
 The defendant has the burden to show the court that the identification procedures were unnecessarily suggestive. (Citation omitted.)
 In State v. Halley (1994) 93 Ohio App.3d 71, 76, 637 N.E.2d 937, 940, the court stated:
 "The threshold question is whether the photo identification is impermissibly suggestive. All identification processes are inherently suggestive. Due process is violated only when the process is so impermissibly suggestive that the identification is unreliable in that there exists a substantial likelihood of irreparable misidentification."
In State v. Barnett (1990), 67 Ohio app.3d 760, the court stated:
 [C]ourts have been reluctant to hold that a showup or presentation of a single photograph of the defendant to a witness violates due process when the confrontation is accidental, when some sort of emergency exists, when the suspect is unknown or at large, or when external factors "prove" the accuracy of the identification. (Citation omitted.) One of the strongest of these external factors which may be used to prove the accuracy of the identification is the situation where the witness already knew the perpetrator before the crime was committed. (Citations omitted.)
Here, Israel, a neighbor of the decedent, testified that he saw a man who he knew as the victim's boyfriend driving down the street in his dark green Jeep Grand Cherokee twice on the morning of June 16, 1995. Since he knew Young prior to his seeing him that morning, the procedure where the police showed him only photographs of Young had not been so impermissibly suggestive as to render his identification unreliable. Due to the witness's prior independent knowledge of Young, the likelihood of irreparable misidentification was not substantial enough to render his identification testimony inadmissable. Therefore, Young failed to prove that the identification procedures were unnecessarily suggestive and we overrule his fourth assignment of error.
Young's fifth assignment of error states that:
 V. WHERE CLEARLY THE ENTIRETY OF EVIDENCE, SUBMITTED AS PROOF OF GUILT, INCLUDING WHAT WAS ADMITTED AS THE EYEWITNESS TESTIMONY (BASED ON OBSERVATIONS SUPPOSEDLY MADE BY ONE WHO WAS NINE [9] YEARS OLD AT THE TIME) WAS SO IMPROBABLE, UNRELIABLE, AND UNSATISFACTORY THAT IT GIVES RISE TO A SERIOUS DOUBT AS TO THE GUILT OF THE ACCUSED, SUCH EVIDENCE MUST BE DEEMED TO HAVE BEEN INSUFFICIENT TO SUPPORT A GUILTY VERDICT.
Young challenges the lone eye witness's identification testimony as not credible or reliable enough to sufficiently support his conviction. The state asserts that the evidence in its entirety sufficiently proved Young guilty. The issue presented then concerns whether the evidence sufficiently supported Young's conviction in light of the alleged unreliability of the eyewitness testimony by Israel.
The court, in State v. Thompkins (1997), 78 Ohio St.3d 380, 390, reiterated an appellate court's standard of review for determining whether the evidence sufficiently supports a criminal conviction:
 A challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. (Emphasis added.)
As the court instructed, the sufficiency inquiry does not encompass the credibility of the witnesses, which, as the court stated in State v. DeHass (1967), 10 Ohio St.2d 230, 231, is primarily for the trier of fact to determine. In addition, the court emphasized that [i]n essence, sufficiency is a test of adequacy. Thompkins, supra at 386.
Here, Young complains that the police did not conduct a professional interview with Israel close to the time of the murder and since Israel failed to make an identification early in the case, his later testimony should be deemed to have been adversely affected. We agree with Young that the police should have interviewed Israel early on after he told the police arriving at the scene of murder that he saw Young's Jeep driving by earlier that day. However, the issue in a sufficiency review concerns whether the evidence, if believed, would support the conviction, and not whether a witness's testimony is credible. Reviewing the state's evidence in its entirety, we find that the eyewitness testimony, if believed by the trier of fact, would, in conjunction with all other evidence presented by the state, support the guilty verdict. Here, the record reflects that the court found Israel to be an extremely credible witness. Accordingly, we overrule Young's fifth assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ JUDGE TERRENCE O'DONNELL