[Cite as *State v. Bohanna*, 2017-Ohio-7003.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 16-CA-81 |
| DANIEL N. BOHANNA | |
| | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Licking County Court of
Common Pleas, Case No. 15 CR 775

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    July 27, 2017

APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

WILLIAM C. HAYES    STEPHEN T. WOLFE
Licking County Prosecutor    Wolfe Law Group, LLC
    1350 W. 5th Ave., Suite 124
By: PAULA M. SAWYERS    Columbus, Ohio 43212
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Floor
Newark, Ohio 43055

*Hoffman, J.*

**{¶1}** Defendant-appellant Daniel N. Bohanna appeals his conviction and sentence entered by the Licking County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant and S.H. lived together in Pataskala, Ohio for eight years. The parties share three children.

**{¶3}** On November 16, 2015, Appellant and S.H. drove to London Correctional Institution. S.H. waited in the car while Appellant was on a tour of the institution. When Appellant returned to the vehicle, he accused S.H. of cheating on him, hitting her in the head as they drove home. S.H. attempted to leave the vehicle, but Appellant threatened to kill her.

**{¶4}** Upon arrival at their residence, Appellant closed the garage door with the vehicle running. S.H. alleges Appellant forced her to engage in sexual intercourse. He then forced her to perform oral sex on him. Appellant continued to beat S.H. using his fists, feet and wooden boards found in the garage.

**{¶5}** On November 17, 2015, S.H. called the Pataskala Police Department. Upon arrival at the residence, S.H. told the officers Appellant beat her for three hours and raped her multiple times. S.H. had visible black eyes and bruising on her arm. S.H. told the officers Appellant became angry while they were driving home, hitting her. She tried to jump out of the vehicle, but Appellant threatened to kill her if she tried to leave. Upon their arrival at the residence, Appellant pulled into the garage, and began to punch and kick

her. He then shut the garage door and turned on the car. S.H. suffered deadly levels of carbon monoxide poisoning. Appellant then beat her with bunk bed boards, forced her to remove her clothes and engaged in sexual intercourse multiple times. S.H. told the officers Appellant later used his iPhone to search methods for reducing swelling and making bruises disappear quickly.

{¶6} S.H. was transported by emergency squad to the hospital. The treating physician documented bruising on S.H.'s body, including a black eye, bruising around her mouth, ear, legs, arms, chests, ribs and back, as well as, dried blood in her ear. S.H. was determined to have suffered from acute carbon monoxide poisoning. A rape kit was collected and tested.

{¶7} On November 20, 2015, a warrant was issued for Appellant's arrest.[1]

{¶8} On November 25, 2015, Appellant was indicted on two counts of rape, in violation of R.C. 2907.02(A)(2), felonies of the first degree; one count of kidnapping, in violation of R.C. 2905.01(A)(2) and/or (3) and/or (4), a felony of the first degree; and one count of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (2), a second degree felony.

{¶9} On November 30, 2015, a search warrant was issued for Appellant's iPhone seized incident to his arrest.

{¶10} On June 21, 2016, Appellant indicated he wished to proceed pro se, and the trial court appointed stand-by counsel.

{¶11} On July 1, 2016, Appellant filed a motion entitled Request to Seek Leave of the Court. The motion sought leave to file pretrial motions due to issues created by prior

---

[1] Appellant's iPhone was seized incident to his arrest.

counsel. On the same date, Appellant filed a motion entitled Motion to Strike State's Request to Preclude Sexual Conduct.[2]

{¶12} On July 7, 2016, Appellant filed a motion to modify the charge of felonious assault based upon defects in the charge.

{¶13} On July 12, 2016, the trial court, via Judgment Entry, denied Appellant's motion for leave, as a blanket motion, finding Appellant had not served the motion(s) upon any other party in the case, pursuant to Criminal Rule 49.

{¶14} On July 21, 2016, Appellant filed a notice to the court requesting review of all photo and media evidence.[3, 4] On the same date, Appellant filed a motion to compel the State to comply with discovery, a motion pertaining to the State's certification of non-disclosure, a response to the State's amended motion for shield hearing or protective order, and a motion to modify the charge of felonious assault based on defects to the charge.

{¶15} On August 19, 2016, Appellant filed a motion to dismiss case and request for discharge of case due to delay in trial. Appellant argued his initial arrest was pursuant to a defective charge of felonious assault, he was not read his Miranda rights, and the existence of two agency case numbers. The State filed a response to the motion on August 24, 2016.

---

[2] On July 6, 2016, the State filed a motion for an order requiring Appellant to comply with Criminal Rule 49. Specifically, the State argued Appellant failed to serve the State of Ohio with his pro se motions. The State filed an objection to the trial court granting a blanket leave to file.

[3] The request indicates service on the State of Ohio via regular U.S. Mail.

[4] The request includes review of videos downloaded from Appellant's cell phone, and the download of the cell phone.

**{¶16}** On August 31, 2016, Appellant filed a request for oral hearing on or before the day of trial, and response to the State's response to the Defendant's motion to dismiss case and request for discharge of case due to delay in trial.

**{¶17}** Via Judgment Entry of August 31, 2016, the trial court ordered Appellant may inquire of the victim's sexual activity with him during the time frame from which semen would be present, but no further. Appellant was permitted to question the victim concerning their children and the circumstances in which she lives. The trial court further overruled Appellant's motion to dismiss the indictment due to alleged defects.[5] [6]

**{¶18}** The matter proceeded to jury trial. Via Judgment Entry of September 9, 2016, Appellant was convicted on all four counts, and the trial court imposed sentence.[7] The trial court issued a nunc pro tunc entry on September 22, 2016.

**{¶19}** Appellant appeals, assigning as error:

**{¶20}** I. THE COURT ERRED WHEN IT ALLOWED IMPERMISSIBLE HEARSAY TESTIMONY.

**{¶21}** II. THE COURT ERRED WHEN IT FAILED TO ADDRESS THE APPELLANT'S MOTION TO SUPPRESS PRIOR TO TRIAL.

**{¶22}** III. THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

---

[5] The trial court further overruled Appellant's motions with regard to speedy trial, jury instruction, and discovery. The court overruled stand-by counsel's request for withdrawal.
[6] The trial court's August 31, 2016 Judgment Entry indicates the trial court felt it was necessary to have the hearing on the record and in open court as there were many other motions and issues to be resolved prior to the trial being conducted in less than eight days.
[7] As Appellant has not assigned as error the sentence imposed by the trial court, we summarily state the procedural history relative to sentencing.

**{¶23}** IV. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

I.

**{¶24}** In the first assignment of error, Appellant maintains the trial court erred in allowing the testimony of the sexual assault nurse practitioner as impermissible hearsay.

**{¶25}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence.

**{¶26}** Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The staff notes to the rule provide in pertinent part:

The circumstantial guaranty of trustworthiness of this exception is derived from the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements. * * * The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted.

Staff Notes to Evid.R. 803(4).

**{¶27}** "The test under Evid.R. 803(4) goes solely to whether a statement was made for purposes of medical diagnosis or treatment. If a statement is made for purposes of diagnosis or treatment, it is admissible pursuant to Evid.R. 803(4)." *State v. Dever,* 64 Ohio St.3d 401, 414, 1992–Ohio–41, 596 N.E.2d 436.

**{¶28}** In *State v. Rose,* 12th Dist. Butler No. CA2011–11–214, 2012–Ohio–5607, the court explained at ¶ 42:

In sexual assault cases such as the case at bar, there is often testimony from a sexual assault nurse. Similar to the dual role of a social worker interviewing a child who may be a victim of sexual abuse, these nurses often perform a dual role involving both medical diagnosis and treatment and the investigation and gathering of evidence. *See State v. Arnold,* 126 Ohio St.3d 290, 2010–Ohio–2742, ¶ 33, 933 N.E.2d 775 (acknowledging the dual role of the social worker in interviewing a child who may be a victim of sexual abuse from both an investigatory and medical perspective). Only those statements made for the purpose of diagnosis and treatment are admissible under Evid.R. 803(4). *See Arnold* at ¶ 28; *State v. Muttart,* 116 Ohio St.3d 5, 2007–Ohio–5267, ¶ 47, 875 N.E.2d 944. Accordingly, the salient inquiry when determining whether a hearsay statement is admissible under Evid.R. 803(4), is whether the statement was made for purposes of diagnosis or treatment rather than for some other

purpose. *See Muttart* at ¶ 47. One such "other purpose" is the gathering of forensic information to investigate and potentially prosecute a defendant. *Arnold* at ¶ 33. To the extent that a victim's statement to a nurse is for investigative purposes in furtherance of such criminal prosecution, the statements will not fall within the hearsay exception under Evid.R. 803(4).

**{¶29}** Dr. Justin Adkins, the treating emergency department physician at Mount Carmel East, testified S.H. disclosed the sexual assault as part of her treatment for injuries. Tr. at 307. He stated his job was to evaluate her injuries, and provide medical treatment. Dr. Adkins testified,

Q. Okay. What did you do at that point after determining the carbon monoxide level and what needed to be done to treat her?

A. The normal process in the ER was that basically I placed her on oxygen to get her level down and monitored that to make sure it was going down appropriately, and then, after her imaging came back and there was no major injuries, I just allowed the process of the – police and the SANE nurse to collect evidence and everything and proceed.

Tr. at 311.

**{¶30}** S.H. was then referred to SANE nurse, Anna Kiser, for further evaluation. Kiser testified as part of her examination she documented S.H.'s story and injuries. S.H.

described vaginal intercourse as part of the incident; therefore, Kiser conducted a sexual assault evaluation kit. Kiser completed a rape kit, which was subsequently locked in a filing cabinet for pick up by the police department. Kiser testified the SANE examination lasted several hours due to the extensive injuries sustained. S.H., despite pain medication, could not sit, stand or lay in one position due to significant pain. Tr. at 608.

**{¶31}** The SANE evaluation was not used as part of Appellant's subsequent diagnosis and treatment. The record reflects S.H. spent the night in the hospital due to carbon monoxide exposure, but was not evaluated again by Dr. Adkins. The record does not reflect the SANE evaluation was subsequently provided to a medical doctor for further diagnosis or medical treatment. Rather, Dr. Adkins testified S.H. was released after he left his shift for the day. Tr. at 345. Accordingly, the testimony of Kiser was testimonial, and not for the purpose of medical treatment and diagnosis. We find the trial court erred in allowing the testimony as impermissible hearsay.

**{¶32}** However, we find any error in the admission of the testimony was harmless. The majority of Kiser's testimony was duplicative of testimony of other witnesses, including S.H. herself. The jury had ample evidence from numerous witnesses apart from the impermissible hearsay testimony of Kiser upon which to base its verdict. See *Shepard v. United States* (1933), 290 U.S. 96, 98, 54 S.Ct. 22, 23, 78 L.Ed. 196, 198 (Cardozo, J.).

**{¶33}** The first assignment of error is overruled.

II.

**{¶34}** In the second assignment of error, Appellant asserts the trial court erred in failing to address Appellant's motion to suppress prior to trial.

**{¶35}** Initially, we note, upon review of the record, Appellant did not assert a motion to suppress his iPhone seized during his arrest, prior to trial. Appellant filed various pretrial motions, none moving the trial court to suppress the iPhone.

**{¶36}** Appellant, who proceeded pro se before the trial court, cites his August 31, 2016 motion requesting an oral hearing and responding to the State's response to Appellant's motion to dismiss. Upon review, we find the August 31, 2016 "request" does not challenge the admission of Appellant's iPhone. Rather, Appellant claims the case number contained on the BCI reports is in error and is evidence of untruthfulness and inaccuracies. In addition, Appellant claimed his standby trial counsel appointed by the trial court had not provided significant legal assistance. We do not find the August 31, 2016 filing tantamount to a motion to suppress the iPhone seized incident to Appellant's arrest or the warrant to search the downloaded files.

**{¶37}** Prior to the commencement of trial, the following exchange occurred,

MR. BOHANNA: My question is that evidence, any evidence from my iPhone should be—

THE COURT: Are you asking that that not be allowed in?

MR. BOHANNA: Yes, sir.

\*\*\*

[PROSECUTOR]: As to the iPhone, one, it's—that would be a motion to suppress. That has not been brought before the Court in a timely manner. There was no motion for leave. It's not addressed in this latest motion to dismiss.

Secondly, also provided in the discovery was a search warrant for the download of that iPhone, Your Honor, that the Court had already addressed. So, again, that would more appropriately be a motion to suppress.

MR. BOHANNA: And that's what I stated at the beginning, Your Honor. I know it would be a suppression- evidence of suppression, but it correlates with all the other issues that I wanted to talk to you about, about the—

THE COURT: Well, I'll overrule your motion to request your iPhone seizure or evidence seized from the iPhone.

Tr. at 47-49.

**{¶38}** At trial, S.H. testified Appellant googled how to fix bruises or lessen swelling on his iPhone. Tr. at 207.

**{¶39}** Upon review, we find the trial court did not error in overruling Appellant's motion to suppress orally asserted on the day of trial. Appellant failed to timely raise the issue before the trial court. The trial court did not abuse its discretion in denying Appellant's request to suppress the iPhone evidence.

**{¶40}** The second assignment of error is overruled.

III. and IV.

**{¶41}** The third and fourth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

**{¶42}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶43}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶44}** Appellant was convicted of two counts of rape, in violation of R.C. 2907.02(A)(2), one count of kidnapping, in violation of R.C. 2905.01(A)(2) and/or (3) and/or (4), and one count of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (2).

**{¶45}** Appellant assigns as error a manifest weight and sufficiency challenge as to his conviction for felonious assault.  Appellant does not challenge his convictions on two counts of rape or one count of kidnapping. Therefore, we limit our analysis to the argument raised as to the charge of felonious assault.

**{¶46}** R.C. 2903.11(A)(1) and (2) define felonious assault as,

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶47}** A "deadly weapon" is defined as "any instrument, device, or thing *capable of inflicting death, and* designed for use as a weapon, or possessed, carried, or *used as a weapon."* R .C. 2923.11(A). (Emphasis added.) The statute is written in the conjunctive. Therefore, the item must meet both parts of the definition: it must not only be capable of inflicting death, it also must be *either* "designed for use as a weapon," *or* possessed, carried, or "used" as a weapon. The word "weapon" is not otherwise statutorily defined, but commonly means an item that is used in "combat."  The way in which the item is employed is thus the key. *State v. Sommerfield*, Cuyahoga Co. No. 84154, 2004-Ohio-6101.

**{¶48}** At trial, the State presented evidence the board used by Appellant during the commission of the felonious assault was capable of causing death and serious physical harm. Tr. at 325-326.  In addition, it was a question of fact for the jury to determine whether the wooden board used by Appellant was a deadly weapon within the definition of R.C. 2923.11(A). We would not be inclined to alter the conclusion of the jury upon this issue even if we were permitted to do so. *State v. Pope,* Logan Co. No. 8-89-19, (1990). Appellant utilized the board as a weapon, which was capable of inflicting death and serious physical harm.

**{¶49}** S.H. testified at trial Appellant began punching her in the head immediately upon leaving the tour. Appellant continued to punch S.H. in the head, back, ribs and face

while driving home. Tr. at 200. Upon nearing their residence, S.H. testified she tried to exit the vehicle, but upon reaching for the door handle, Appellant grabbed the back of her hair, threatening to kill her. Tr. at 200.

{¶50} At the residence, Appellant drove into the garage and closed the garage door. He kicked S.H. several times, pulled her from the car, and continued to kick her in the ribs, head and chest. Appellant told S.H. to stand up and take off her clothes. He then hit her in the back with bunk bed boards, until the wood began breaking. Tr. at 202.

{¶51} Appellant told S.H. to put her hands on the trunk of the car, and proceeded to engage in vaginal intercourse with her. Appellant then ordered S.H. to get on her knees and perform fellatio. When she would not open her mouth, Appellant punched her in the mouth. He then forced himself into her mouth, until she vomited. Tr. at 203-205. S.H. testified the encounter lasted approximately two to three hours. Tr. at 208.

{¶52} The next morning, Appellant left for school and S.H. had difficulty breathing. She went to a neighbors to call 911, as Appellant had taken her phone. Tr. at 208-209.

{¶53} Dr. Justin Adkins testified at trial S.H. presented to the emergency department seeking medical care. Dr. Adkins stated, "it appeared she had been assaulted fairly severely." Tr. at 306. She had obvious bruising on her face, multiple bruises on her body, and was visibly upset. Dr. Adkins noted S.H. had bruising and swelling to the left of her face, and her left eye. Tr. at 306. He further testified to her carbon monoxide poisoning, as dangerously high. S.H.'s chest pain could have been caused by the carbon monoxide or the chest wall injury she sustained. Tr. at 311. Dr. Adkins described the bruising to S.H.'s back as about the size of a basketball.  Tr. at 321. S.H. presented to the emergency room with severe pain. Tr. at 323.

{¶54} Dr. Adkins, and the treating SANE nurse testified at trial as to the medical examination of S.H. and the significant injuries sustained.

{¶55} The weight of the evidence and the credibility of the witnesses are left to the sound discretion of the trier of fact. We find there was competent, credible evidence presented by the State to find Appellant committed the offense of felonious assault beyond a reasonable doubt.

{¶56} The third and fourth assignments of error are overruled.

{¶57} Appellant's convictions and sentence entered by the Licking County Court of Common Pleas are affirmed.

By: Hoffman, J.

Delaney, P.J. and

Baldwin, J. concur